Daniels, J.
The estate which was settled the decree was left by Thomas Barber, who died intestate on the fourth of July, 1838. He left a widow who died on the 17th of August, 1866. The intestate deposited $125 in the Bank for Savings in the city of New York. This deposit did not become known to his widow, neither did it to either of his next of kin, until the time when letters of administration were issued to the appellant in December, 1885. He had previously endeavored to discover property belonging to the intestate and had expended money for that object which was not allowed to him in his final settlement. The amount *935 of money received by him consisted mostly of interest on this deposit. The interest and principal together which passed into his hands as administrator was the sum of $1,670.96. And its management and administration were affairs of the greatest possible simplicity. There were no debts and no complications whatever in the proceedings. But when he presented his petition for the settlement of his accounts he stated a balance to be owing to himself amounting to $826.55. The estate itself was wholly consumed by charges made, leaving this deficiency after paying the commissions of the administrator. This statement was of itself sufficient to awaken the suspicion, if not to produce the positive belief, that the administrator had flagrantly violated all the obligations of his trust and to subject his own unsupported oath to discredit. For it can well be seen that the administration of the estate was so entirely plain as to render all unusual expenses entirely unnecessary.
. In making up the account, charges were made for the expenses of journeys to Glens Falls, Rochester and frequently to New York, from the residence of the administrator in the state of Connecticut, and also to Milton, on the Hudson river. But there was nothing to be or which could be accomplished by these journeys which correspondence would fail to secure. There was, therefore, no necessity for creating these charges against the estate. And as to those for the journeys to Glens Falls and Rochester, they were divested of all colorable foundation by the other evidence given on the hearing.
The administrator also claimed ten dollars a day for fifty-four days’ searching for evidence and witnesses concerning the claim against the Bank of Savings, where the money had been on deposit This was grossly overcharged. For finding whether the intestate had money in either of the few savings banks existing in New York city at the time of his decease was a very plain and easy act to perform. And it in fact proved to be so, as soon as the administrator set about it in anything like a practical or intelligent way,for his inquiries readily discovered the fact. There was no well grounded excuse for these charges, and they were rightly rejected on the settlement For persons to whom the administration of the estates of deceased persons are committed are required to" observe a reasonable degree of prudence in their management, and to avaid loading the estate with charges and expenditures not necessarily required to be made. That is an obligation which this administrator, as well as his counsel, seem to have wholly overlooked.
With the counsel a contract was made by the administrator to pay him for his services twenty-five per cent, of the estate. It was not in need of that service. The nature of its administration supplies very clear evidence of that fact. There was no proof offered to the contrary, but the counsel stood upon the agreement alone as a justification for the $417.74 which had been paid to him. And that act of itself betrayed a conscious belief that he was not entitled to the money.
The law does not sanction such dealings between the attorney and the person by whom he is employed, more especially where *936 the estate to "be charged is the property of others. But before the bargain can be permitted to stand, it must be proved to have been fairly and justly entered into. Nesbit v. Lockman, 34 N. Y., 167, 169-70; Matter of Hynes, 51 Hun, 340, 343; 21 N. Y. State Rep., 343. And no inclination existed to make any proof that would protect this charge by this principle. It was, therefore, justly rejected, as it should be. .And so was the charge for the other counsel, by reducing the amount from one hundred to fifty dollars. It was an abuse- of his position for the administrator to incur and make these charges. And his conduct is not entitled to be excused by the statement that he was endeavoring to discover whether the intestate did not have other property arising out of a seizure and detention of his vessel at one time by the French government The decree allowed the administrator all that under any sense of justice he had the right to charge. And it should be affirmed, with costs to each of the respondents.
Van Brunt, P. J., concurs; Brady, J., concurs in the result